

**New York Civil Liberties Union**
125 Broad Street, 19th Floor
New York, New York 10004
212.607.3300
www.nyclu.org

May 19, 2020

**By ECF**
Honorable Raymond J. Dearie
United States District Judge
Eastern District of New York
 225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    Request for a Pre-Motion Conference
               *Jones v. Stanford*, 20-cv-1332 (RJD)

Dear Judge Dearie:

We represent the plaintiffs in this matter, which raises facial and as applied challenges under the First Amendment to part of New York's Electronic Security and Targeting of Online Predators Act ("e-STOP"), N.Y. Exec. Law § 259-c(15), and two directives of the Department of Corrections and Community Supervision ("DOCCS"). The statute and directives broadly ban access to the internet and social media for individuals on the sex offender registry, N.Y. Correct. Law 168-a, even though the plaintiffs did not use the internet or social media in their offenses. *See* ECF. No. 1, Compl. ¶¶ 1, 7, 42-49, 90-95. Pursuant to Individual Practices III.A-B, we write respectfully to request a pre-motion conference and briefing schedule for the plaintiffs to file a motion for a preliminary injunction enjoining the defendants from enforcing the unconstitutional provisions of e-STOP and DOCCS Directive 9201 banning social media access.[1] Counsel for the plaintiffs conferred with counsel for the defendants and, as detailed below, they consent to a briefing schedule that provides them with one month to respond to the plaintiffs' opening motion papers.

*Background*

Defendants impose release conditions on the plaintiffs and other individuals on parole and community supervision who are required to register as "sex offenders" ("Registrants"), which from the day they leave incarceration, prohibit access to all social media. Part of e-STOP requires the Board of Parole to impose a mandatory condition prohibiting certain categories of Registrants from accessing "commercial

---

[1] Plaintiffs also challenge the constitutionality of DOCCS directive 9202, which bans internet access for all Registrants without regard to whether they have used the internet in their offenses. The parties have conferred extensively in an effort to lift these restrictions during the crisis caused by the novel coronavirus pandemic. Because most services and public life have shifted to the internet during the coronavirus pandemic, the harms caused by the internet ban have been especially acute. Defendants have agreed to allow most plaintiffs internet access during the pandemic and therefore the plaintiffs do not move for a preliminary injunction at this time on their claims concerning the internet ban imposed by Directive 9202.

social networking websites," which are broadly defined to cover many popular social media platforms such as Facebook, Twitter, LinkedIn, and Instagram, as well as a number of websites such as the New York Times or Amazon. Compl. ¶¶ 42-46. DOCCS imposes this condition on many Registrants, such as the plaintiffs here, through its Directive 9201. Compl. ¶ 47. E-STOP and Directive 9201 require imposition of a social media ban on three categories of Registrants: all Level Three Registrants, those whose underlying offenses involved children, and those whose underlying offenses involved internet use. DOCCS also imposes this condition on Registrants even when e-STOP does not require it. Compl. ¶ 49.

Plaintiffs have conferred extensively with the defendants in an effort to lift these restrictions during the coronavirus pandemic because public life has shifted online during this crisis.[2] As a result of these informal efforts, the defendants have provided most plaintiffs with relief from the most onerous restrictions on legitimate internet use, such as communicating with treatment providers via internet or ordering goods online. All but one of the plaintiffs, however, are still banned from social networking websites pursuant to e-STOP and Directive 9201 and therefore cannot take part in this essential forum for information, such as following politicians like Governor Cuomo and President Trump on social media.[3] The plaintiffs therefore seek to file a motion for a preliminary injunction to vindicate their constitutional rights under the First Amendment.

### e-STOP and Directive 9201 Are Overbroad in Violation of the First Amendment

The plaintiffs challenge the section of e-STOP and DOCCS Directive 9201 that impose a total social media ban on certain categories of Registrants as a violation of the First Amendment. It is well established that there is a First Amendment right to access the internet and social media and that sweeping bans on access to them will not survive constitutional scrutiny. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017); *United States v. Eaglin*, 913 F.3d 88, 96 (2d Cir. 2019) ("In our view, *Packingham* nevertheless establishes that, in modern society, citizens have a First Amendment right to access the Internet."); *Yunus v. Robinson*, No. 17-CV-5839 (AJN), 2019 WL 168544, at *17 (S.D.N.Y. Jan. 11, 2019) (reviewing the same condition at issue here and holding that "blanket limitations on an individual's ability to access social media will receive intermediate scrutiny, even when imposed as conditions of parole"). In *Packingham*, the Supreme Court found that North Carolina's law banning "sex offenders" from accessing social media was overbroad, failing intermediate scrutiny. 137 S. Ct. at 1736. As the Supreme Court made clear, North Carolina's broad definition of social networking websites rendered the law unconstitutionally overbroad because it banned a number of legitimate online forums that provided little chance of sexual recidivism. *Id.* at 1738 ("It is well established that, as a general rule, the Government 'may not suppress lawful speech as the means to suppress unlawful speech.'" (citation omitted)). Accordingly, courts have routinely struck down these types of blanket bans that forbid social media use. *See, e.g.*, *Eaglin*, 913 F.3d at 97; *Yunus*, 2019 WL 168544, at *17; *Doe v. Kentucky ex rel. Tilley*, 283 F. Supp. 3d 608, 613 (E.D. Ky. 2017) (striking down prohibition on access to social networking for individuals on the State's sex offender registry); *People v. Morger*, -- N.E. 3d --, 2019 IL 12364, at *12 (Ill. Nov. 21, 2019) (striking down parole condition barring social media access).

---

[2] The parties exchanged several letters and held calls on April 8 and May 6, 2020 in an attempt to narrow the issues for motion practice.
[3] Plaintiff Compton Mohibir has been adjudicated a risk level one and is not otherwise covered by e-STOP or Directive 9201. Nevertheless, his parole conditions ban him from using social media.

The social media ban at issue here is overbroad and not narrowly tailored to the government's interest.[4] First, e-STOP and Directive 9201 are overbroad because they ban *all* Registrants in certain categories from accessing social media, regardless of whether they pose a risk to reoffend by using social media. *See Yunus*, 2019 WL 168544, at *17 (holding in as-applied challenge that the ban at issue here is overbroad because "Plaintiff's crime did not involve the internet, social media, the exchange of electronic messages, cell phones, or computers . . . these restrictions therefore plainly burden substantially more speech than necessary and therefore fail intermediate scrutiny"). DOCCS provides no individualized assessment prior to the imposition of the ban and imposes this ban on Registrants, including the plaintiffs, who did not use social media in the commission of their offenses. Second, e-STOP and Directive 9201 are overbroad because they ban access to *all* social networking websites, preventing Registrants from engaging in a large amount of constitutionally protected activities such as participating in discussions about current events or religion. The social media ban is not targeted in any way to preclude only those websites or platforms that may pose a risk for misuse.

The plaintiffs are suffering irreparable harm without access to the vast democratic forums of social media. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Accordingly, the plaintiffs seek to file a motion for a preliminary injunction because the social media ban in e-STOP and DOCCS Directive 9201 cannot pass muster and are causing irreparable harm to them, none of whom used social media in connection with their offenses of conviction.

**Proposed Schedule**

Plaintiffs respectfully request the following schedule for the preliminary injunction: the plaintiffs file their motion for a preliminary injunction on May 26; the defendants file their opposition on June 26; and plaintiffs file their reply on July 10. Further, the plaintiffs respectfully request to be heard on the motion as soon as practicable for the Court.

Thank you for your consideration of this request.

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION FOUNDATION

By:   *s/ Molly K. Biklen*
MOLLY K. BIKLEN
DANIEL R. LAMBRIGHT*
125 Broad Street, 19th Floor
New York, New York 10004
212-607-3380

---

[4] Even reviewed under a pre-*Packingham* standard, e-STOP and Directive 9201, which are applied to all Registrants on community supervision regardless of their offense, are not reasonably related to an individual's past conduct, are arbitrary and capricious, and are not reasonably and necessarily related to the government's interest in rehabilitating the individual and preventing further offending. *See Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972); *Singleton v. Doe*, No. 14-CV-0303 MKB, 2014 WL 3110033, at *3 (E.D.N.Y. July 7, 2014). The blanket social media ban is not limited to those individuals who have misused social media, and, in prohibiting so much legitimate expressive activity, are not reasonably and necessarily related to any rehabilitation or public protection goals.

3

mbiklen@nyclu.org

RUTGERS CONSTITUTIONAL RIGHTS CLINIC

By:   s/ *Alexis Karteron*
ALEXIS KARTERON
S.I. Newhouse Center for Law and Justice
123 Washington Street
Newark, NJ 07102
973-353-3239
alexis.karteron@law.rutgers.edu

PRISONERS' LEGAL SERVICES OF NY

By: s/ *Michael E. Cassidy*
MICHAEL E. CASSIDY, Esq.
JAMES BOGIN, Esq.**
KAREN L. MURTAGH, Executive Director
41 State Street, Suite M112
Albany, NY 12207
mcassidy@plsny.org

*Counsel for Plaintiffs*

*Application for admission pending.
**Pro Hac Vice application forthcoming.