

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

June 17, 2020

**BY ECF**
Hon. Raymond J. Dearie
United State District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   Jones v. Stanford, et al., 20-CV-1332 (RJD) (SJB)

Dear Judge Dearie:

This Office represents Defendants in the above-captioned action. We write in response to the Court's June 3, 2020 direction that we address the issue of whether Plaintiffs' parole officers and/or other DOCCS' officials have discretion to relax the statutorily imposed provisions of the Electronic Security and Targeting of Online Predators Act. N.Y. Exec. Law ("e-STOP") §259-c(15) (the "Statute"). (See June 3, 2020 minute entry). The Statute requires the Board of Parole to impose certain conditions as a condition of release to ensure public safety. Parole staff then apply the e-STOP condition along with other conditions regarding computer and internet use. They have, in this very case, permitted Plaintiffs to use smart phones and computers to access multiple internet websites and perform other functions.

The Statute was enacted by the New York State Legislature on January 31, 2008, to protect the public from "the danger of recidivism posed by sex offenders who commit predatory acts against children, and the protection of the public from these offenders …" Doe v. Cuomo, No. 10 Civ. 1534, 2013 WL 1213174, at *1 (N.D.N.Y. Feb. 25, 2013). The Legislature recognized that, "given the secrecy, manipulation and deception that often accompanies sex offending behavior, the internet—with its promise of anonymity—can provide an opportunity for convicted sex offenders on probation or parole to circumvent supervision, thereby undermining their treatment and increasing the risk of recidivism." (Id.) (internal citation omitted). Because it functions by requiring the Board to impose and the parolee to agree to a condition of release, N.Y. Exec. Law §259-c(15) applies only while a releasee is under community supervision. Thus, at the completion of a period of parole or post-release supervision, the restriction ends.

While there is a dearth of caselaw interpreting the exact reach of the Statute, its facial mandates are relatively limited. Specifically, where a sex offender's victim was under 18 years of age, or the convicted offender has been designated a Level III sex offender; or if the internet was used to facilitate the crime, the Board of Parole shall impose as a mandatory condition of parole that the parolee "shall be prohibited from using the internet to access … commercial social networking website[s] …." N.Y. Exec. Law §259-c(15). A "commercial social networking website," as defined by the Statute, "shall mean any business, organization or other entity operating a website that permits persons under eighteen years of age to be registered users for the purpose of establishing personal relationships with other users"; and in determining which websites qualify, the Statute provides an exclusive list that limits the definition to those websites that provide minors the ability to engage in the following three specific activities:

(i) create web pages or profiles that provide information about themselves where such web pages or profiles are available to the public or to other users;
(ii) engage in direct or real time communication with other users, such as a chat room or instant messenger; and
(iii) communicate with persons over eighteen years of age . . .

NY Exec. Law §259-c(15).

The Statute thus applies on its face only to sites on which minors can "register[]" "for the purpose of establishing personal relationships with other users." For example, Parole Officers have approved sex offenders' requests for access to general news websites (i.e., CNN or the NY Times), shopping websites (i.e., Amazon), and websites used to obtain health care, apply for governmental benefits, seek employment or attend religious services, among others, with such access generally conditioned on the parolee's agreement to have their internet usage monitored in some fashion.[1] In contrast, sex offenders' requests to access dating websites such as Tinder, and core social media websites which are often used by minors "for the purpose of establishing personal relationships with other users," such as Facebook, Instagram, and Tumblr, are generally denied. As described in my May 26, 2020 letter (ECF #14), Defendants here have accommodated Plaintiffs' specific requests for internet access in multiple respects and will continue to address such requests on a case-by-case basis. The Statute does not appear to have been implicated by the specific accommodations Plaintiffs have asked of their parole officers to date.

In short, E-STOP is a narrowly tailored provision that speaks to the Board's duty to impose the conditions upon convicted sex offenders as a condition of release and requires, among other things, that the condition prohibits access to such commercial social networking sites. But the Statute does not, and does not purport to, speak to an individual Parole Officer's ability thereafter to permit access to those websites which do not fall under the statute's scope according to a

---

[1] The most common means of monitoring a parolee's access to the internet is through unannounced visits to the parolee's residence, during which visit their cell phone and/or computer is unlocked and their search histories inspected. Searches to determine whether a parolee is using more than one computer or cell phone are also conducted. In some instances, a monitoring device known as a "NetNanny" is installed, at the parolee's expense, on his computer, to block access to certain websites, but this device is not commonly used. The Statute itself does not speak to these matters.

parolee's individualized needs and risks, including many sites that may possess user profiles or commenting functions.

      In closing, Defendants believe that the most productive approach is for the parties identify and address Plaintiffs' individual needs on a case-by-case basis. If the Court determines that a conference would be beneficial to further address these issues, we request that the Court take into consideration that I will be away during the week of June 20, 2020.

      Thank you for your time and consideration in this regard.

      Very truly yours,

      */s/ Bruce J. Turkle*
      Bruce J. Turkle
      Assistant Attorney General
      (212) 416-8524
      bruce.turkle@ag.ny.gov

cc:    Molly Biklen, Esq. (by ECF)
       Daniel Lambright, Esq (by ECF)
       Alexis Karteron, Esq. (by ECF)
       James Bogin, Esq. (by ECF)
       Michael Cassidy, Esq. (by ECF)